UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- X

JIANGSU HIGH HOPE CORPORATION,

                *Plaintiff,*

        *- against -*

PARIGI GROUP LTD., PARIGI ENTERPRISES-
RETAIL LLC, PARIGI ENTERPRISES-WHOLESALE
LLC, PARIGI MMS HOLDINGS LLC, PRG NOUVEAU
LLC, and MORRIS SROUR,

                *Defendants.*

--------------------------------------------------------------------- X

HANGZHOU A&C (HONG KONG) INTERNATIONAL
LIMITED,

                *Plaintiff,*

        *- against -*

PARIGI GROUP LTD., PARIGI ENTERPRISES-
RETAIL LLC, PARIGI ENTERPRISES-WHOLESALE
LLC, PARIGI MMS HOLDINGS LLC, PRG NOUVEAU
LLC, and MORRIS SROUR,

                *Defendants.*

--------------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/29/18

17-cv-1570 (PAC)

17-cv-5366 (PAC)

**OPINION AND ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs Jiangsu High Hope Corporation ("High Hope") and Hangzhou A&C (Hong

Kong) International Limited ("Hangzhou") bring separate actions against Defendants Parigi

Group Ltd. ("Parigi Group"), Parigi Enterprises-Retail ("Parigi Retail"), Parigi Enterprises-

Wholesale LLC ("Parigi Wholesale"), Parigi MMS Holdings LLC ("Parigi Holdings"), PRG

Nouveau, LLC ("PRG"), and Morris Srour. Both Plaintiffs allege breach of contract, unjust

enrichment, and account stated. Defendants move to dismiss both Plaintiffs' complaints. For the

reasons that follow, each motion is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiffs initiated this action by filing a joint complaint on March 2, 2017. *See* Compl.,

17-cv-1570 Dkt. 1. Defendants requested that Plaintiffs' claims be severed, as Plaintiffs alleged

breaches of different contracts on different invoices, for different goods, delivered on different

dates. *See* Letter Motion, 17-cv-1570 Dkt. 20. On July 14, 2017, High Hope filed an amended

complaint that omitted Hangzhou's claims and narrowed its own claims, *see* Amended Compl.,

17-cv-1570 Dkt. 27, and Hangzhou filed a separate complaint, *see* Compl., 17-cv-5366 Dkt. 1.

High Hope's amended complaint alleges that, in 2014, High Hope entered a business

relationship with Morris Srour in which High Hope would produce apparel goods for Srour's

various "Parigi" entities. Amended Compl., 17-cv-1570 Dkt. 27, ¶¶ 13-14. High Hope is a

Chinese corporation which imports and exports a wide variety of commercial products, including

apparels and textiles. *Id.* ¶ 1. The Parigi entities are children's apparel designers and vendors

which sell apparel products to retailers. *Id.* ¶ 2. Throughout the course of the business

relationship, High Hope received purchase orders from Parigi under its various entity names, all

of which were owned, controlled, and managed by Srour. *Id.* ¶ 14. Upon receiving a purchase

order, High Hope would manufacture the specified goods, a member of Parigi would inspect the

goods in China, and the goods would be shipped to Parigi's destination or Parigi's customer's

destination. *Id.* ¶ 18.

In 2014 and 2015, the Parigi entities began to default on their payment obligations under

the purchase orders. *Id.* ¶ 19. Thus, High Hope and "Parigi" entered a formal agreement on

October 30, 2015 ("October 2015 Agreement"), in which Parigi agreed to pay $219,585.07 in

installments ending on March 15, 2016 in exchange for High Hope forgiving a portion of the

debt that Parigi owed. *Id.* ¶ 20, Ex. A. The October 2015 Agreement defined "Parigi" as "Parigi

2

Group, Ltd. and each of its affiliates. [sic] with an address at 112 West 34th Street, New York, NY 10120." *Id.* Ex. A. The October 2015 Agreement was signed by Morris Srour on behalf of Parigi Group, Ltd. *See id.* ¶ 20, Ex. A. Parigi defaulted on the October 2015 Agreement. *Id.* ¶ 21.

High Hope alleges that, in April 2016, Srour proposed entering into a new agreement ("April 2016 Proposed Agreement") which promised High Hope a further reduced amount. *Id.* ¶ 22. The April 2016 Proposed Agreement admitted that Parigi Group Ltd. was experiencing financial difficulty, but it stated that another entity, PRG Nouveau LLC, would be assuming some of its liabilities. *Id.* High Hope refused to sign the April 2016 Proposed Agreement. *Id.*

In addition to the amount owed under the October 2015 Agreement, High Hope alleges that Parigi and Srour owe High Hope a total of $178,053.35 for other unpaid invoices. *Id.* ¶ 23. High Hope alleges entitlement to $72,375.75 for two shipments of goods that it produced and shipped to Parigi on September 28, 2015 and October 11, 2015. *Id.* The invoices for these two shipments list Parigi Wholesale as the consignee ("High Hope – Wholesale Invoices"). *Id.* Ex. B at 3-5, 7. High Hope also alleges entitlement to $105,677.60 for orders that it fulfilled for Parigi's client, Costco. *Id.* ¶ 23. The invoices for this shipment, dated December 25, 2015, list Parigi Group, Ltd. as the consignee ("High Hope – Group Invoices"). *Id.* Ex. C at 2-3. High Hope alleges that Parigi and Srour acknowledged receipt of these invoices and order fulfillments but have not compensated High Hope. *Id.* ¶ 25. High Hope attached copies of the October 2015 Agreement, High Hope – Wholesale Invoices, and High Hope – Group Invoices to its amended complaint. *Id.* Exs. A, B, C.

Hangzhou's complaint alleges that Hangzhou entered a similar business relationship with Srour and Parigi in 2014. Compl., 17-cv-5366 Dkt. 1, ¶ 13. Hangzhou is also a Chinese

corporation, and it specializes in cloth dyeing and garment manufacturing. *Id.* ¶¶ 1, 6.

Hangzhou, like High Hope, alleges that Parigi sent purchase orders to Hangzhou for apparel

goods, Hangzhou fulfilled those orders, and Parigi defaulted on its payment obligations. *Id.*

¶¶ 14, 16, 18, 20. Hangzhou alleges that it is entitled to $256,541.44 for seven unpaid invoices,

representing goods which Parigi received from Hangzhou, but for which Parigi never

compensated Hangzhou ("Hangzhou Unpaid Invoices"). *Id.* ¶ 21. Each of the seven invoices

lists Parigi Group as the consignee or payor. *Id.* Exs. A-G. In addition, Hangzhou alleges that it

is entitled to $25,536.40 for two invoices representing goods that were manufactured by

Hangzhou pursuant to purchase orders, but that could not be shipped because Parigi never

provided shipping instructions (Hangzhou Shipping Invoices"). *Id.* ¶ 22. Each of these two

invoices also lists Parigi Group as the consignee. *Id.* Ex. H at 2-3. Hangzhou attached all of the

invoices to its complaint. *Id.* Exs. A-H.

Defendants moved to dismiss High Hope's amended complaint on August 21, 2017, *see*

Mot. to Dismiss, 17-cv-1570 Dkt. 33, and moved to dismiss Hangzhou's complaint on October

9, 2017, *see* Mot. to Dismiss, 17-cv-5366 Dkt. 24. The Court turns to these motions.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must have

sufficient "factual plausibility" to allow the court "to draw the reasonable inference that the

defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff's factual

allegations must "raise a right to relief above the speculative level" and cross "the line from

conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Because

the parties proceed from the assumption that New York law governs this diversity action, the

Court will apply New York law. *See Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d

Cir. 2000).

**DISCUSSION**

**I.    New Documents Submitted in Response to the Motions**

As a preliminary matter, Defendants argue that the Court should disregard new factual

allegations and evidentiary material submitted by High Hope and Hangzhou in response to

Defendants' motions.  High Hope has submitted additional purchase orders, a copy of the April

2016 Proposed Agreement, and docket sheets and complaints in unrelated actions against

Defendants.  *See* 17-cv-1570 Dkt. 36 Exs. A-D.  Hangzhou has submitted two declarations

containing various factual allegations.  *See* 17-cv-5366 Dkts. 29-1 (Ma Decl.), 30 (Fei Decl.).

"In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P.

12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached

to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time*

*Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).  "[W]here a document is not incorporated by

reference, the court may nevertheless consider it where the complaint relies heavily upon its

terms and effect, which renders the document integral to the complaint." *Chambers v. Time*

*Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotations omitted).

Hangzhou's declarations containing new factual allegations clearly do not satisfy these

requirements.  *See Novie v. Village of Montebello*, No. 10-cv-9436, 2012 WL 354222, at *9

(S.D.N.Y. Aug. 16, 2012) (collecting cases and concluding that "it is improper for a court to

consider declarations and affidavits on a motion to dismiss").  Nor do the docket sheets and

complaints in unrelated actions, as they were neither mentioned in High Hope's complaint nor

relied upon in drafting it.  *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150,

156 (2d Cir. 2006) ("Here, Massie's testimony as a government witness in an unrelated criminal

5

proceeding was neither mentioned nor relied upon by appellant in drafting its complaint.").

With respect to the purchase orders and the April 2016 Proposed Agreement, it is true

that they were mentioned in High Hope's complaint. The purchase orders appear to be those

exchanged between High Hope and Parigi which led to Parigi incurring a debt of $219,585.07

and entering the October 2015 Agreement with High Hope. *See* Amended Compl., 17-cv-1570

Dkt. 27, ¶¶ 13-20. The April 2016 Proposed Agreement was explicitly mentioned. *Id.* ¶ 22.

Nevertheless, these documents do not satisfy the requirements for consideration. "[N]ot

every document referred to in a complaint may be considered incorporated by reference." *Glob.*

*Network Commc'ns*, 458 F.3d at 156-57 (citations omitted). Rather, "a plaintiff's reliance on the

terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's

consideration of the document on a dismissal motion." *Chambers*, 282 F.3d at 153. Hence, "[i]n

most instances where this exception is recognized, the incorporated material is a contract or other

legal document containing obligations upon which the plaintiff's complaint stands or falls . . . ."

*Glob. Network Commc'ns*, 458 F.3d at 157. None of High Hope's breach of contract claims

stand or fall upon the purchase orders or the April 2016 Proposed Agreement. High Hope's first

breach of contract claim is based upon the October 2015 Agreement, which by its own terms

superseded the previous purchase orders. *See* Amended Compl., 17-cv-1570 Dkt. 27, ¶¶ 26-31,

Ex. A. High Hope's second and third breach of contract claims are based upon different sets of

purchase orders. *See id.* ¶¶ 32-45. And High Hope never agreed to the April 2016 Proposed

Agreement and does not seek relief under its terms. Thus, the Court will not consider any of

these documents for purposes of ruling on the motions.

## II.     Piercing the Corporate Veil

Both Plaintiffs seek to pierce the corporate veil in order to hold every Defendant liable

for all causes of action despite the fact that not every Defendant entered into each agreement. *See* High Hope Mot. in Opp'n, 17-cv-1570 Dkt. 36, at 4; Hangzhou Mot. in Opp'n, 17-cv-5366 Dkt. 29, at 3. "Under New York law, a court may pierce the corporate veil where 1) the owner exercised complete domination over the corporation with respect to the transaction at issue, and 2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001). When determining whether an owner exercised complete domination, courts consider the following factors:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

*Id.* The standard for piercing the corporate veil is "very demanding." *Capmark Financial Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 347 (S.D.N.Y. 2013). "Thus, disregard of the corporate form is warranted only in extraordinary circumstances, and conclusory allegations of dominance and control will not suffice to defeat a motion to dismiss." *Id.* (quotation and alteration omitted).

Here, Plaintiffs' conclusory allegations fall short of this standard. Both complaints allege that the Parigi entities shared an address and were operated by Srour, and High Hope's complaint also includes the allegation that the April 2016 Proposed Agreement is a "further example of how Morris Srour was entering into various agreement using various Parigi entities changing the entities and their ability to pay at will." *See* Hangzhou Compl., 17-cv-5366 Dkt. 1, ¶¶ 7-12; High Hope Amended Compl., Dkt. 27, ¶¶ 7-12, 22. The sharing of an address coupled with a

conclusory allegation of dominance simply is simply not sufficient to state a claim based on veil-piercing. *See In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 418-19 (S.D.N.Y. 2011) (dismissing veil-piercing claims where "[t]he complaint contains no allegations that the Parent Companies misused the corporate form, disregarded corporate formalities, commingled funds, or otherwise misused the separate identities of the entities"). The cases that Plaintiffs cite are all distinguishable, as the plaintiffs in those cases alleged additional details that suggested a disregard of corporate formalities and intentional undercapitalization. *See, e.g., 265 W.34th St., LLC v. Joon Sik Chung*, 2015 N.Y. Misc. LEXIS 1580, at *25-26 (N.Y. Sup. Ct. May 8, 2015) (allegations of disregard of corporate formalities included "maintaining no books of account" and "failing to keep adequate records relating to governance of their corporate affairs and accounting of finances," and allegations of inadequate capitalization included "that the Chungs consistently took money from the Hyunil bank account to purchase goods for their other businesses which have nothing to do with the business of Hyunil" (alterations omitted)); *Benchimol v. Plumeri*, 2012 Misc. LEXIS 6424, at *9-10 (N.Y. Sup. Ct. June 29, 2012) ("Here, the proposed amended verified complaint includes several paragraphs' worth of allegations concerning instances of defendants' failure to follow proper corporate formalities . . . ."). Accordingly, the Court will not consider piercing of the corporate veil as a basis for holding all Defendants liable for each claim.

## III.    Breach of Contract Claims

### A. High Hope

High Hope raises three breach of contract claims: (1) violation of the October 2015 Agreement; (2) failure to pay the High Hope – Wholesale Invoices; and (3) failure to pay the High Hope – Group Invoices. Defendants suggest that these claims should be dismissed in their

8

entirety because Plaintiffs fail to specify which Defendants entered into which agreements, and thus "Plaintiff's claims in the Amended Complaint fail to properly provide Defendants with notice of the alleged wrongdoing of each and the basis of liability." Def.'s Mem. in Supp., 17-cv-1570 Dkt. 33-1, at 6. The cases cited by Defendants, however, involved failures to submit copies of the relevant contracts. *See, e.g.*, Kirschner v. Cable/Tel Corp., 576 F. Supp. 234, 245 (E.D. Pa. 1983) ("[T]he Court has been unable to determine whether the individual defendants or corporate defendants or both are parties to the contract."). Here, High Hope has attached the relevant agreements to its complaint, and it is simple for the Court and Defendants to determine the alleged wrongdoing of each Defendant and the basis of liability.

The High Hope – Wholesale Invoices are addressed only to Parigi Wholesale. Likewise, the High Hope – Group Invoices are addressed only to Parigi Group. Therefore, these claims will proceed, but Count II of the Amended Complaint is dismissed as to all Defendants except Parigi Wholesale, and Count III is dismissed as to all Defendants except Parigi Group.

With regard to the October 2015 Agreement, Defendants contend that, at a minimum, this claim should be dismissed as to all Defendants except Parigi Group, because only Parigi Group entered into the agreement. The October 2015 Agreement, however, specifies that it is between "Parigi" and High Hope, and it further defines "Parigi" as "Parigi Group, Ltd. and each of its affiliates. [sic] with an address at 112 West 34th Street, New York, NY 10120." *See* Amended Compl., 17-cv-1570 Dkt. 27, Ex. A. High Hope's Amended Complaint alleges that each of the Parigi entities, with the exception of PRG, has an address at 112 West 34th Street, New York, NY 10120. *Id.* ¶¶ 7-10. Therefore, Count I of the Amended Complaint is dismissed only as to PRG and Srour, and the claim will proceed as to Parigi Group, Parigi Retail, Parigi Wholesale, and Parigi Holdings.

## B. Hangzhou

Hangzhou raises two breach of contract claims: (1) failure to pay the Hangzhou Unpaid Invoices; and (2) failure to provide shipping instructions for the Hangzhou Shipping Invoices. Hangzhou does not allege the existence of any formal agreement akin to the October 2015 Agreement between High Hope and Parigi. Defendants point out that the invoices underlying these two claims are addressed only to Parigi Group. Accordingly, for the same reasoning that applies to High Hope's claims, Counts I and II of Hangzhou's Complaint are dismissed as to all Defendants except Parigi Group.

## IV. Unjust Enrichment Claims

### A. High Hope

High Hope's fourth claim is for unjust enrichment in the alternative against all Defendants. Defendants contend that this claim must be dismissed because it is duplicative of the breach of contract claims. *See Royal Host Realty, LLC v. 793 Ninth Ave. Realty LLC*, 192 F. Supp. 3d 348, 357 (S.D.N.Y. 2016) ("If the plaintiff is simply restating a contract or tort claim, then unjust enrichment is not available."). Nevertheless, "even though Plaintiffs may not ultimately *recover* under both the breach of contract and unjust enrichment claims, courts in this Circuit routinely allow plaintiffs to *plead* such claims in the alternative." *Transcience Corp. v. Big Time Toys*, LLC, 50 F. Supp. 3d 441, 452 (S.D.N.Y. 2014) (collecting cases). This is especially true where, as here, Defendants have not conceded that the agreements at issue are valid and enforceable. *See Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 239 F. Supp. 3d 761, 795 (S.D.N.Y. 2017) ("A court may allow a breach of contract and an unjust enrichment claim to proceed past the motion to dismiss stage when the validity or scope of the contract is difficult to determine."); *Air Atlanta Aero Eng'g Ltd. v. SP*

*Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 195 (S.D.N.Y. 2009) ("Courts have permitted pleading in the alternative in the face of a written agreement, however, when there is a dispute as to the agreement's validity or enforceability."). Therefore, at this stage, the Court declines to dismiss the unjust enrichment claim in its entirety.

The Court will, however, consider dismissing the claim as to specific Defendants. "To state a claim for unjust enrichment under New York law, a plaintiff must provide proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Transcience Corp.*, 50 F. Supp. 3d at 453. Moreover, "while a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment, there must exist a relationship or connection between the parties that is not too attenuated." *Georgia Malone & Co., Inc. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012) (quotations omitted).

High Hope has adequately alleged that Parigi Group, Parigi Retail, Parigi Wholesale, and Parigi Holdings are all parties to at least one of the agreements, which suggests that each of these Defendants received goods from, and had a relationship with, High Hope. Hence, this unjust enrichment claim will proceed as to these Defendants. This claim will also proceed as to Srour, because High Hope alleges that its dealings with all of the Parigi entities went through Srour and that Srour owned and operated each Parigi entity. *See Palatkevich v. Choupak*, 152 F. Supp. 3d 201, 205-06, 221-22 (S.D.N.Y. 2016) (sustaining unjust enrichment claim against both companies and their owners where plaintiff alleged that all defendants were enriched by work he did for companies). This claim will be dismissed at to PRG, however, because High Hope alleges no facts suggesting that PRG received any benefit from, or had any relationship with, High Hope. Indeed, the Amended Complaint mentions PRG only in relation to the April 2016

11

Proposed Agreement, which High Hope refused to sign. Accordingly, Count IV of the Amended

Complaint is dismissed as to PRG, but it will proceed as to all other Defendants.

## B. Hangzhou

Hangzhou also raises a claim for unjust enrichment in the alternative against all

Defendants.[1] Like High Hope, Hangzhou alleges that it conducted business through Srour and

that Srour owned Parigi Group, the only entity listed on the underlying invoices. *See* Compl.,

17-cv-5366 Dkt. 1, ¶¶ 13-15, 23. Accordingly, for the same reasoning that applies to High

Hope's claims, Count III of Hangzhou's Complaint is dismissed as to all Defendants except

Parigi Group and Srour.

## V.    Account Stated Claims

### A. High Hope

High Hope's last claim is for an account stated. "Under New York law, an account stated

refers to a promise by a debtor to pay a stated sum of money which the parties had agreed upon

as the amount due." *Air Atlanta Aero Eng'g Ltd.*, 637 F. Supp. 2d at 197 (quotation omitted).

"The account stated need not necessarily be based on a final statement of account: invoices that

are submitted on a regular basis can also create an account stated." *White Diamond Co., Ltd. v.

Castco, Inc.*, 436 F. Supp. 2d 615, 624 (S.D.N.Y. 2006).

Defendants argue that High Hope fails to plead any facts which would justify imposing

liability on all of the Defendants. *See Sound Commc'ns, Inc. v. Rack and Roll, Inc.*, 88 A.D.3d

523, 523 (N.Y. App. Div. 1st Dep't 2011) ("All of plaintiff's underlying invoices, which are

annexed to the complaint, are addressed to defendant Rack and Roll, LLC only. Therefore, the

---

[1] Hangzhou mistakenly labels this third claim as its "fourth cause of action," and its fourth claim, for account stated, as its "fifth cause of action." *See* Compl., 17-cv-5366 Dkt. 1, at pp. 7-8. Regardless, the Court will refer to Hangzhou's unjust enrichment claim as Count III and its account stated claim as Count IV.

complaint fails to state an account stated cause of action against the moving defendants."). To be sure, PRG and Srour are not listed as parties or consignees in any of the agreements or invoices. The remaining Defendants, however, are parties to the October 2015 Agreement, which suggests the existence of prior invoices addressed to them, and the invoices underlying the two other breach of contract claims are specifically addressed to Parigi Wholesale and Parigi Group. Therefore, Count V of the Amended Complaint is dismissed as to PRG and Srour, but it will proceed as to Parigi Group, Parigi Wholesale, Parigi Retail, and Parigi Holdings.

**B. Hangzhou**

Hangzhou's last claim is also for an account stated. Because the underlying invoices are addressed only to Parigi Goup, Count IV of Hangzhou's Complaint is dismissed as to all Defendants except Parigi Group.

## CONCLUSION

For the foregoing reasons, the Court dismisses High Hope's claims as follows: Counts I and V are dismissed as to all Defendants except Parigi Group, Parigi Wholesale, Parigi Retail, and Parigi Holdings; Count II is dismissed as to all Defendants except Parigi Wholesale; Count III is dismissed as to all Defendants except Parigi Group; and Count IV is dismissed only as to PRG. The Court dismisses Hangzhou's claims as follows: Counts I, II and IV are dismissed as to all Defendants except Parigi Group, and Count III is dismissed as to all Defendants except Parigi Group and Srour. The dismissals are without prejudice.

Dated: New York, New York
     March 29, 2018

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

13